IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO._____

CAROLYN MARTIN and TROY GOINGS,
on behalf of themselves and others similarly
situated,

       Plaintiffs,

v.

HCA-IT&S FIELD OPERATIONS, INC.,
       Defendant.
_____|

## COMPLAINT
### *(FLSA Collective Action)*

**COMES NOW** Carolyn Martin ("MARTIN") and Troy Goings ("GOINGS"), individually and on behalf of all others similarly situated, file this Collective Action Complaint against Defendant, HCA-IT&S FIELD OPERATIONS (collectively "HCA-IT&S") seeking all relief available under the Fair Labor Standards Act of 1938, as amended, 29 USC §§ 201, et seq. ("FLSA") on behalf of themselves and all current and former Physicians Services Specialists and Consulting Physician Service Providers who worked at Defendant's locations throughout the State of Florida, and for this cause of action state the following:

## NATURE OF THE ACTION

1.      MARTIN and GOINGS, on behalf of themselves and other current and former employees who will opt into this action pursuant to the FLSA, state that MARTIN and GOINGS and other similarly situated employees are entitled to: (1) unpaid wages from HCA-IT&S for overtime work for which they did not receive overtime pay as required by the FLSA; (2) liquidated damages pursuant to the FLSA; (3) reasonable fees and costs; and (4) any further relief this Court deems just and equitable.

## JURISDICTION AND VENUE

2.      This is an Action brought against HCA-IT&S for violations of the FLSA.

3.      This Action is brought to recover unpaid compensation, in the form of overtime compensation, owed to Plaintiffs, individually and on behalf of all employees and former employees of HCA-IT&S who are similarly situated with them, pursuant to the FLSA.

4.      This Court has subject matter jurisdiction over this Action pursuant to 28 U.S.C. §1331.

5.      Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b), since both MARTIN and GOINGS worked at Defendant's locations in this District.

6.      MARTIN is *sui juris* and is a resident of this District.

7.      GOINGS is *sui juris* and is a resident of this District.

8.      HCA-IT&S conducts business in this District, and throughout the State of Florida.

9.      MARTIN worked for HCA-IT&S in East Florida Division, Inc., for hospitals located in this District.

10.     GOINGS worked for HCA-IT&S in East Florida Division, Inc., for providers who worked at hospitals located in this District.

11.     All actions relevant to this Complaint occurred in this District and throughout the State.

## CONDITIONS PRECEDENT

12.     All conditions precedent have been satisfied or waived.

## FACTUAL ALLEGATIONS

### HCA-IT&S  "Who We Are"

13.     HCA-IT&S  asserts that: "As one of the nation's leading providers of healthcare services, HCA Healthcare is comprised of 182 hospitals and 2,300+ sites of care in 20 states and the United Kingdom. In addition to hospitals, sites of care include surgery centers, freestanding ERs, urgent care centers, diagnostic and imaging centers, walk-in clinics and physician clinics."

14.     HCA-IT&S 's Principal Address for the hospitals located in the East Florida Division, Inc., the South Atlantic Division, Inc., the West Florida Division, Inc. and the North Florida Division I, Inc. is: One Park Plaza, Nashville, TN 37203

("Principal Address").

15. HCA-IT&S provides technology and support to physicians who provides services to hospitals in the East Florida Division, West Florida Division, Southeast Atlantic Division and North Florida I Division.

***East Florida Division, Inc.***

16. As of the date of this filing, the hospital facilities located within the East Florida Division, Inc. are:

    a.    HCA Florida Aventura Hospital

    b.    HCA Florida Highlands Hospital

    c.    HCA Florida JFK Hospital

    d.    HCA Florida JFK North Hospital, a part of HCA Florida JFK Hospital

    e.    HCA Florida Kendall Hospital

    f.    HCA Florida Lawnwood Hospital

    g.    HCA Florida Mercy Hospital

    h.    HCA Florida Northwest Hospital

    i.    HCA Florida Palms West Hospital

    j.    HCA Florida Plantation Emergency, a part of Westside Hospital

    k.    HCA Florida Raulerson Hospital

l.      HCA Florida St. Lucie Hospital

m.     HCA Florida Westside Hospital

n.      HCA Florida Woodmont Hospital

*South Atlantic Florida Division, Inc.*

17.     As of the date of this filing, the hospital facilities located within Florida in the South Atlantic Division, Inc. are:

a.      HCA Florida Memorial Hospital

b.      HCA Florida Orange Park Hospital

*West Florida Division, Inc.*

18.     As of the date of this filing, the hospital facilities located within the West Florida Division, Inc. are:

a.      HCA Florida Bayonet Point Hospital

b.      HCA Florida Blake Hospital

c.      HCA Florida Brandon Hospital

d.      HCA Florida Citrus Hospital

e.      HCA Florida Englewood Hospital

f.      HCA Florida Fawcett Hospital

g.      HCA Florida Largo Hospital

h.      HCA Florida Northside Hospital

i.      HCA Florida Oak Hill Hospital

j.      HCA Florida Pasadena Hospital

k.      HCA Florida Sarasota Doctors Hospital

l.      HCA Florida South Shore Hospital

m.      HCA Florida South Tampa Hospital

n.      HCA Florida St. Petersburg Hospital

o.      HCA Florida Trinity Hospital

p.      HCA Florida West Tampa Hospital, a Part of HCA Florida

South Tampa Hospital

**North Florida Division I, Inc.**

19.      As of the date of this filing, the hospital facilities located within the North

Florida Division I, Inc. are:

a.      HCA Florida Capital Hospital

b.      HCA Florida Fort Walton-Destin Hospital

c.      HCA Florida Gulf Coast Hospital

d.      HCA Florida Lake City Hospital

e.      HCA Florida Lake Monroe Hospital

f.      HCA Florida North Florida Hospital

g.      HCA Florida Ocala Hospital

h.    HCA Florida Osceola Hospital

i.    HCA Florida Poinciana Hospital

j.    HCA Florida Putnam Hospital

k.    HCA Florida Twin Cities Hospital

l.    HCA Florida West Hospital

m.    HCA Florida West Marion Hospital, A Part of HCA Florida

Ocala Hospital

n.    Oviedo Medical Center

o.    UCF Lake Nona Hospital

*HCA's Operations*

20.    At all times material to this Action, Defendant was an enterprise engaged in commerce or in the production of goods for commerce as defined by §203(s)(l) of the FLSA.

21.    At all times relevant to this Action, Defendant was an "employer" of the Plaintiffs as defined by § 203(d) of the FLSA.

22.    At all times material to this Action, the Plaintiffs "employees" of Defendant as defined by § 203(e)(1) of the FLSA, and worked for Defendant within the territory of Florida, within three years preceding the filing of this lawsuit.

23.    HCA-IT&S has a uniform policy and practice of consistently requiring its

Provider Solutions Specialist and Consulting Solutions Specialist to work more than forty hours per week for a salaried amount without paying them overtime compensation.

***PSS and CPSS Duties***

24.    MARTIN was employed with HCA-IT&S as a "Provider Solutions Specialists" who assisted with on-boarding providers and their staff who worked at hospitals within HCA-IT&S ("PSS").

25.    GOINGS was employed with HCA-IT&S as a "Consulting Provider Solutions Specialists" who assisted with on-boarding providers and their offices located outside for HCA-IT&S ("CPSS").

26.    Though HCA-IT&S has changed the title of the positions held by MARTIN, and similarly situated PSS employees, and GOINGS, and similarly situated CPSS employees, over the three years prior to the filing of this Action, HCA-IT&S has hired employees and paid them on a salary-basis to perform the following job duties that is now known as Provider Solutions Specialist ("PSS") who provide "Support" for physicians and their staff who work inside hospital locations and Consulting Provider Solutions Specialist ("CPSS") who provides "Support" duties for physicians and their staff who work outside hospital locations.

27.    The PSS and CPSS provides "Support" under three main stages:

        a.    <u>Onboarding:</u> HCA-IT&S provides the PSS or CPSS with

assigned providers and their start date; the PSS and CPSS employees track start dates; onboard providers; use a spreadsheet prepared and provided by HCA-IT&S to check-off stages in the on-boarding process; HCA-IT&S conducts weekly meetings to monitor the PSS' and CPSS' progress;

b. <u>On-going Support:</u> whereby the PSS and CPSS employees provide support to their assigned providers; and

c. <u>Terminating a Provider:</u> whereby PSS and CPSS employees follow a spreadsheet to track the close-out of the provider, including closing notes, ensuring the return of equipment, filing of paperwork, and close-out of all IT services.

28.     HCA-IT&S provided the spreadsheets for the PSS and CPSS employees to perform their duties and check-off each task.

29.     HCA-IT&S held weekly meetings to monitor and track the PSS' and CPSS' work.

30.     In addition to the weekly meetings, HCA-IT&S continuously monitored the work performed by the PSS and CPSS employees.

31.     The PSS and CPSS employees handle the following "Support Requests":

a.     Rounds in physician practices to ensure ambulatory electronic health record ("HER") support needs and issues are proactively identified and addressed.

b.     Provides direct support of ambulatory EHR solutions to physician practices.

c.     Documents interactions with physician practices to confirm needs are met, reporting issues to other teams as needed.

d.     Coordinates provider and practice service requests and incident resolutions through the Division Service Desk.

9

Reviews problem tracking databases and has the ability to track and analyze metrics. HCA- IT&S, Inc.

e. Conducts problem analysis, timely and accurate resolution, and root cause analysis for complex ambulatory EHR issues and requests.

f. Escalates and works with enterprise subject matter experts and integrated support team resources to identify trends and manage resolution of ambulatory EHR application issues and requests.

g. Analyzes and provides hands-on support for moderate to complex inquiries. Identifies and facilitates discussions with appropriate technical group or vendor to resolve the problem and coordinates as needed.

h. Monitors and communicates trends and issues that may affect administration/provider relationships, regulatory compliance, and quality initiatives.

i. Provides timely response and resolution to provider issues identified and reported in GrowthLink, as applicable.

j. Serves as a subject-matter expert for ambulatory EHR solutions and support to the Service Desk Community.

32. The PSS and CPSS employees Job Requirements are:

a. Possesses a mature understanding of system access and information protection standards and processes to offer guidance and instruction to practice personnel regarding EHR technology, related systems, and reporting access.

b. Collects and routes non-standard access requests to governing teams for consideration; Provides timely feedback and outcome to physician practices.

c. Promotes system security, information protection, and patient confidentiality and helps ensure compliance.

d. Enhances provider utilization of HCA technologies, by offering at the elbow support, one-on-one training, and support.

33. The PSS and CPSS employees provide the following "Training" to the

physicians and their staff:

a.  Responsible for leading, planning, coordinating, developing, tracking and delivery of training for providers and practice personnel on ambulatory EHR technologies and supporting systems.

b.  Collaborates with Central EHR Implementation and Ambulatory Clinical Informatics teams to design, develop, and implement education and training materials for the ambulatory EHR system in support of providers' and practice staff initial and ongoing training.

c.  Develops, maintains and customizes ambulatory EHR system training materials to reflect market or practice or specialty-specific needs.

d.  Prepares and delivers presentations, demonstrations, train-the-trainer, and special training courses with frequency.

e.  Trains in a multitude of settings and leverage existing technology to meet the needs of the audience or customer base.

f.  Coordinate and executes group testing procedure training plans, conduct pilot trainings, and provide feedback to project lead to better serve our HCA business partners.

34.  The PSS and CPSS employees provide the following "Customer Service":

a.  Partners with practice, market, division and Corporate colleagues to enable a successful physician experience and foster improved customer service interactions.

b.  Effectively communicates with customers, maintaining positive body language with confidence and patience.

c.  Follows up, post issue resolution, to complete customer service cycle.

d.  Seeks feedback through customer interaction to identify areas of improvement.

35.  The PSS and CPSS employees are supposed to have the following "Knowledge, Skills and Abilities":

a. Organizational
  i. Organize/prioritize tasks and maintain attention to detail
  ii. Willingness to update job skills in a changing environment
  iii. Flexibility to manage unanticipated changes
  iv. Adaptable to changing environment of the healthcare industry to physician support
b. Leadership
  i. Possess well-developed leadership skills
  ii. Professional attitude and appearance
  iii. Self-motivated and goal oriented
  iv. Works independently; receives minimal guidance.
  v. Acts as a mentor and provides technical direction
c. Communication
  i. Demonstrated ability to lead group discussions with clinical and information technology personnel, verbally and writing
  ii. Delivers information in a clear, concise, and compelling manner to effectively engage others and achieve desired results
  iii. Excellent customer-facing teaching abilities
  iv. Exchange information across department, organization/enterprise; communicates independently, thorough understanding of subject/topic; sharing technical expertise or providing direction/instruction.
d. Customer Service
  i. Demonstrated customer service focus
  ii. Broad experience in providing high-level service
  iii. Lead discussions around providing quality customer service, orientation and/or training
e. Relationship Building
  i. Demonstrated ability to establish and build strong relationships among Corporate, Division, Market, and practice personnel.
  ii. Ability to work well with others and lead focused discussions that facilitate promote growth between business partners.
f. Problem Solving
  i. Analyze and handle multiple duties simultaneously and

12

           exhibit initiative

    ii.    Extensive understanding of workflow and how systems are used in physician practices

    iii.    Work assignments are advanced/complex in nature; accountable for major projects

    iv.    Uses best practices and in-depth knowledge and experience; applies expert analytics and/or technical interpretation to provide highly creative solutions.

g.    Clinical/Technical

    i.    Mature understanding of clinical application support processes and ambulatory EHR workflows preferred

    ii.    Extensive experience supporting providers

    iii.    Broad expertise with clinical information systems

    iv.    Understands pertinent regulatory guidelines (HIPAA) and government programs (Meaningful Use)

    v.    Demonstrated advanced computer skills

h.    Healthcare Inspiration:

    i.    Knows technology improves the patient experience

    ii.    Believes clinicians care for people better when armed with the right technology

    iii.    Provides tools caregivers need to do their best work

    iv.    Sees that technology applied to healthcare is meaningful... it matters

36.    HCA-IT&S's Preferred but not Required Job Requirements are:

Proficiency in clinical applications, ambulatory EHR.

37.    HCA-IT&S does not require the PSS and CPSS employees to be College graduates or take advanced course studies or related experience with 5 years previous experience in healthcare related field, though those education areas are "preferred".

38.    The PSS' and CPSS' Physical Demands/Working Conditions are:

a.    Requires prolonged sitting, some bending, stooping and

        stretching.

b.    Requires eye-hand coordination and manual dexterity sufficient to operate a keyboard, photocopier, telephone, calculator and other office equipment.

c.    Requires normal range of hearing and eyesight to record, prepare and communicate appropriate reports.

d.    Work is performed in an office environment.

e.    Work may be  stressful at times.

f.    Contact may involve dealing with angry or upset people.

g.    Staff must remain flexible and available to provide staffing assistance for any/all disaster or emergency situations.

***Collective Action Allegations:***

39.    Plaintiffs were not computer programmers and did not create new technology or make improved versions of technology while working for Defendant. Therefore, Plaintiffs are not subject to the computer professional exemption of 29 U.S.C. 213(a)(17).

40.    MARTIN, on her behalf and on behalf of all similarly situated PSS employees was paid a specified annual salary.

41.    GOINGS, on his behalf and on behalf of all similarly situated CPSS employees was paid a specified annual salary.

42.    MARTIN and other similarly situated PSS employees, were not paid any overtime compensation despite the fact that the members of the Physicians Services Group worked more than 40 hours per week.

43.    GOINGS and other similarly situated CPSS employees, were not paid any overtime compensation despite the fact that the members of the Physicians Services

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | F: 877.464.7316

Group worked more than 40 hours per week.

44.     MARTIN and all similarly situated PSS employees who elect to participate in this Action seek unpaid overtime compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b).

45.     GOINGS and all similarly situated CPSS employees who elect to participate in this Action seek unpaid overtime compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b).

46.     The provisions set forth in 29 U.S.C. §§206 and 207, respectively, of the FLSA apply to Defendant and all members of the Plaintiffs' Classes herein were covered by §§ 206 and 207 of the FLSA while they were employed by Defendant.

47.     The duties of MARTIN and the other similarly situated PSS employees of HCA-IT&S did not involve determining hardware, software or system functional specifications, or working on the design, development, documentation, analysis, creation, testing or modification of computer systems or programs.

48.     The duties of GOINGS and the other similarly situated CPSS employees of HCA-IT&S did not involve determining hardware, software or system functional specifications, or working on the design, development, documentation, analysis, creation, testing or modification of computer systems or programs.

49.     The duties of MARTIN and the other similarly situated PSS employees of HCA-IT&S are not directly related to the management or general business operations of

15

Defendant or Defendant's customers.

50.     The duties of GOINGS and the other similarly situated CPSS employees of HCA-IT&S are not directly related to the management or general business operations of Defendant or Defendant's customers.

51.     MARTIN and the other similarly situated PSS employees of HCA-IT&S did not exercise discretion or independent judgment with respect to matters of significance during their employment by Defendant.

52.     GOINGS and the other similarly situated CPSS employees of HCA-IT&S did not exercise discretion or independent judgment with respect to matters of significance during their employment by Defendant.

53.     While working for HCA-IT&S, MARTIN and the other similarly situated PSS employees did not have the authority to formulate, affect, interpret, or implement management policies or operating practices.

54.     While working for HCA-IT&S, GOINGS similarly situated and the other CPSS employees did not have the authority to formulate, affect, interpret, or implement management policies or operating practices

55.     While working for HCA-IT&S, MARTIN and the other similarly situated PSS employees did not carry out major assignments in conducting the operations of the business.

56.     While working for HCA-IT&S, GOINGS and the other similarly

16

situated CPSS employees  did not carry out major assignments in conducting the operations of the business.

57.     While working for HCA-IT&S, MARTIN and the other similarly situated PSS employees of Defendant's did not perform work that affected business operations to a substantial degree.

58.     While working for HCA-IT&S, GOINGS and the other similarly situated CPSS employees of Defendant's did not perform work that affected business operations to a substantial degree.

59.     While working for HCA-IT&S, MARTIN and the other similarly situated PSS employees did not have authority to commit Defendant in matters that had a significant impact.

60.     While working for HCA-IT&S, GOINGS and the other similarly situated CPSS employees did not have authority to commit Defendant in matters that had a significant impact.

61.     While working for HCA-IT&S, MARTIN and the other similarly situated PSS employees did not have the authority to negotiate and bind the company on significant matters.

62.     While working for HCA-IT&S, GOINGS and the other similarly situated CPSS employees did not have the authority to negotiate and bind the company on significant matters.

CADOGAN LAW |  300 S. PINE ISLAND ROAD, SUITE 107  |  PLANTATION, FL 33324  |  T: 954.606.5891  |  F: 877.464.7316

63.     While working for HCA-IT&S, the primary duty of MARTIN and the other similarly situated PSS employees did not include providing consultation and expert advice to management.

64.     While working for HCA-IT&S, the primary duty of GOINGS and the other similarly situated CPSS employees did not include providing consultation and expert advice to management.

65.     While working for HCA-IT&S, MARTIN and the other similarly situated PSS employees were not involved in planning long or short-term business objectives.

66.      While working for HCA-IT&S, GOINGS and the other similarly situated CPSS employees were not involved in planning long or short-term business objectives.

67.     While working for HCA-IT&S, MARTIN and the other similarly situated PSS employees did not investigate and resolve matters of significance on behalf of management.

68.     While working for HCA-IT&S, GOINGS and the other similarly situated CPSS employees did not investigate and resolve matters of significance on behalf of management.

69.     The positions of MARTIN and the other similarly situated PSS employees of HCA-IT&S are not exempt from overtime under the FLSA.

70.     The positions of GOINGS and the other similarly situated PSS employees

of HCA-IT&S are not exempt from overtime under the FLSA.

71.     Defendant has intentionally failed and/or refused to pay the Plaintiffs and other similarly situated PSS AND CPSS employees according to the provisions of the FLSA.

72.     MARTIN and similarly situated PSS employees periodically worked during lunch.

73.     GOINGS and similarly situated CPSS employees periodically worked during lunch.

74.     The systems, practices and duties of MARTIN and the other similarly situated PSS employees of HCA-IT&S have existed for at least three years prior to the filing of this Action and on-going throughout the Defendant's businesses.

75.     The systems, practices and duties of GOINGS and the other similarly situated CPSS employees of HCA-IT&S have existed for at least three years filing of this Action and on-going throughout the Defendant's businesses.

76.     For at least three years, HCA-IT&S is aware or should have been aware of the requirements of the FLSA and its corresponding regulations.  Despite this knowledge, HCA-IT&S has failed to pay its PSS and CPSS employees for all hours worked in excess of forty (40) at half-time rate of their regular hourly rate.  Therefore, Defendant has willfully violated the overtime provisions of the FLSA.

77.     There are numerous other similarly situated PSS and CPSS employees and

former PSS and CPSS employees of Defendant who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of Court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

78.     MARTIN therefore seeks to represent the following class of similarly situated PSS employees: All current and former U.S. based employees of Defendant, who at any time between October 13, 2019 and the present: (1) worked for the Defendant and performed the duties of PSS, (2) worked more than forty (40) hours per week in one or more weeks, (3) did not receive payment for their hours of work in excess of forty (40) at one-half (.5) times their regular rate of pay. All employees fitting or falling under the foregoing description would benefit from Court-supervised notice and the opportunity to join the present lawsuit, and should be so notified. ("Putative PSS FLSA Collective")

79.     Plaintiff GOINGS therefore seeks to represent the following class of similarly situated CPSS employees: All current and former U.S. based employees of Defendant, who at any time between October 13, 2019 and the present: (1) worked for the Defendant and performed the duties of CPSS, (2) worked more than forty (40) hours per week in one or more weeks, (3) did not receive payment for their hours of work in excess of forty (40) at one-half (.5) times their regular rate of pay. All employees fitting or falling under the foregoing description would benefit from Court-supervised notice and the

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | F: 877.464.7316

opportunity to join the present lawsuit, and should be so notified. ("Putative CPSS FLSA Collective")

80.    HCA-IT&S was aware, or should have been aware, that the work performed by MARTIN and the Putative PSS FLSA Collective members constitutes compensable work time under the FLSA and was not preliminary, postliminary or *de minimus.*

81.    HCA-IT&S was aware, or should have been aware, that the work performed by GOINGS and the Putative CPSS FLSA Collective members constitutes compensable work time under the FLSA and was not preliminary, postliminary or *de minimus.*

82.    HCA-IT&S further has engaged in widespread pattern and practice of violating the provisions of FLSA by failing to pay Plaintiffs and other similarly situated PSS and CPSS employees and former employees in accordance with §207 of the FLSA.

83.    As a result of Defendant's violations of the FLSA, the named collective action Plaintiffs, as well as all others similarly situated, have suffered damages by failing to receive compensation in accordance with §207 of the FLSA.

84.    In addition to the amount of unpaid wages and benefits owing to MARTIN and all other similarly situated PSS employees, she is also entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b) and prejudgment interest.

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | F: 877.464.7316

85.     In addition to the amount of unpaid wages and benefits owing to GOINGS and all other similarly situated CPSS employees, he is also entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b) and prejudgment interest.

86.     Defendant's actions in failing to compensate the Plaintiffs, as well as other similarly situated PSS and CPSS employees and former PSS and CPSS employees, in violation of the FLSA, were willful.

87.     Those similarly situated employees are known to HCA-IT&S, are readily identifiable and can be located through HCA-IT&S's records.

88.     Upon information and belief, Defendant has not made a good faith effort to comply with the FLSA.

89.     The Plaintiffs, and all others similarly situated PSS and CPSS employees, are also entitled to an award of attorney's fees pursuant to 29 U.S.C. §216(b).

<u>COUNT I</u>
<u>FLSA ACTION FOR UNPAID OVERTIME COMPENSATION BY MARTIN AND ON BEHALF OF THE PUTATIVE PSS FLSA COLLECTIVE MEMBERS</u>

90.     MARTIN, on behalf of herself and the Putative PSS FLSA Collective Members, repeat and reallege paragraphs 1-5, 6, 8, 9, 11-24, 26-40, 42, 44, 46-47, 49, 51, 53, 55, 57, 59, 61, 63, 65, 67, 69, 71-72, 74, 76-77, 78, 80, 82-84 and 86-89, as though fully stated herein.

91.     HCA-IT&S has engaged in a widespread pattern and practice of violating

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | F: 877.464.7316

the FLSA, as detailed in this Collective Action Complaint.

92.     MARTIN and the Putative PSS FLSA Collective members have consented in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b).

93.     The overtime wage provisions set forth in 29 U.S.C. §§ 201 et seq. apply to HCA-IT&S.

94.     At all relevant times, MARTIN and the Putative PSS FLSA Collective members were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

95.     HCA-IT&S is an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

96.     At all times relevant, MARTIN and the Putative PSS FLSA Collective members were employees within the meaning of 29 U.S.C. §§ 203 (e) and 207(a).

97.     HCA-IT&S has failed to pay MARTIN and other similarly situated Putative PSS FLSA Collective members the overtime wages to which they were entitled under the FLSA.

98.     HCA-IT&S's violations of the FLSA, as described in the Collective Action Complaint, have been intentional and willful.

99.     HCA-IT&S has not made a good faith effort to comply with the FLSA with respect to the compensation of the MARTIN and other similarly situated Putative PSS FLSA Collective members.

CADOGAN LAW |  300 S. PINE ISLAND ROAD, SUITE 107  |  PLANTATION, FL 33324  |  T: 954.606.5891  |  F: 877.464.7316

100.     HCA-IT&S has intentionally, willfully, and regularly engaged in a company- wide policy, pattern, or practice of violating the FLSA with respect to MARTIN and the Putative PSS FLSA Collective members, which policy, pattern or practice was authorized, established, promulgated, and/or ratified by HCA-IT&S's corporate headquarters.  This policy, pattern or practice includes but is not limited to:

    a.    willfully failing to record all of the time MARTIN and the Putative PSS FLSA Collective members have worked for the benefit of HCA-IT&S;

    b.    willfully failing to keep accurate time records as required by the FLSA;

    c.    willfully failing to credit the MARTIN and the Putative PSS FLSA Collective members for all hours worked including overtime hours, consistent with the requirements of the FLSA; and

    d.    willfully failing to pay the MARTIN and the Putative PSS FLSA Collective members wages for all hours worked including overtime wages for hours in excess of 40 hours per workweek.

101.     Because HCA-IT&S's violations of the FLSA have been willful, a three-

year statute of limitations applies, pursuant to 29 U.S.C. § 255, as may be tolled by equity or agreement of the parties.

**WHEREFORE,** Plaintiff, CAROLYN MARTIN, individually and on behalf of all other similarly situated persons of the Putative PSS FLSA Collective, pursuant to §216(b) of the FLSA, pray for the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under FLSA;

b.   Certification of this Action as a collective action brought pursuant to the FLSA §216(b);

c.   Designation of Plaintiff as a representative of the other PSS employees working for HCA-IT&S ("PSS FLSA Collective Plaintiffs");

d.   That, at the earliest possible time, MARTIN be allowed to give notice, or that the Court issue such notice, to all Defendant's covered employees in all locations within the United States during the three years immediately preceding the filing of this suit, to all other potential plaintiffs who may be similarly situated informing them that this Action has been filed, the nature of the Action, and of their right to opt in to this lawsuit if they worked overtime but were not paid compensation and

benefits pursuant to 29 U.S.C. §216(b);

e.  An award of damages to MARTIN and similarly situated employees, in the amount of their respective unpaid overtime compensation, plus an equal amount of liquidated damages pursuant to 29 U.S.C. §216(b);

f.  MARTIN's reasonable attorneys' fees, including the costs and expenses of this Action;

g.  Costs of Action incurred herein, including expert fees;

h.  Pre-judgment and post-judgment interest, as provided by law; and

i.  Such other legal relief to which they may be entitled.

## COUNT II
### FLSA ACTION FOR UNPAID OVERTIME COMPENSATION BY GOINGS AND ON BEHALF OF THE PUTATIVE CPSS FLSA COLLECTIVE MEMBERS

102.  GOINGS, on behalf of himself and the Putative CPSS FLSA Collective Members, repeat and reallege paragraphs 1-5, 7, 8, 10-23, 25-39, 41, 43, 45-46, 48, 50, 52, 54, 56, 58, 60, 62, 64, 66, 68, 70-71, 73, 75-76, 79, 81-83, and 85-89 as though fully stated herein.

103.  HCA-IT&S has engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Collective Action Complaint.

104.  GOINGS and the Putative CPSS FLSA Collective members have consented

in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b).

105.    The overtime wage provisions set forth in 29 U.S.C. §§ 201 et seq. apply to HCA-IT&S.

106.    At all relevant times, GOINGS and the Putative CPSS FLSA Collective members were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

107.    HCA-IT&S is an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

108.    At all times relevant, GOINGS and the Putative CPSS FLSA Collective members were employees within the meaning of 29 U.S.C. §§ 203 (e) and 207(a).

109.    HCA-IT&S has failed to pay GOINGS and other similarly situated Putative CPSS FLSA Collective members the overtime wages to which they were entitled under the FLSA.

110.    HCA-IT&S's violations of the FLSA, as described in the Collective Action Complaint, have been intentional and willful.

111.    HCA-IT&S has not made a good faith effort to comply with the FLSA with respect to the compensation of the GOINGS and other similarly situated Putative CPSS FLSA Collective members.

112.    HCA-IT&S has intentionally, willfully, and regularly engaged in a company- wide policy, pattern, or practice of violating the FLSA with respect to

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | F: 877.464.7316

GOINGS and the Putative CPSS FLSA Collective members, which policy, pattern or practice was authorized, established, promulgated, and/or ratified by HCA-IT&S's corporate headquarters.  This policy, pattern or practice includes but is not limited to:

    a.    willfully failing to record all of the time GOINGS and the Putative CPSS FLSA Collective members have worked for the benefit of HCA-IT&S;

    b.    willfully failing to keep accurate time records as required by the FLSA;

    c.    willfully failing to credit the GOINGS and the Putative CPSS FLSA Collective members for all hours worked including overtime hours, consistent with the requirements of the FLSA; and

    d.    willfully failing to pay the GOINGS and the Putative CPSS FLSA Collective members wages for all hours worked including overtime wages for hours in excess of 40 hours per workweek.

113.    Because HCA-IT&S's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255, as may be tolled by equity or agreement of the parties.

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | F: 877.464.7316

**WHEREFORE,** Plaintiff, TROY GOINGS, individually and on behalf of all other similarly situated persons of the Putative CPSS FLSA Collective, pursuant to §216(b) of the FLSA, pray for the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under FLSA;

b.   Certification of this Action as a collective action brought pursuant to the FLSA §216(b);

c.   Designation of GOINGS as a representative of the other CPSS employees working for HCA-IT&S ("CPSS FLSA Collective Plaintiffs");

d.   That, at the earliest possible time, GOINGS be allowed to give notice, or that the Court issue such notice, to all HCA-IT&S's covered employees in all locations within the United States during the three years immediately preceding the filing of this suit, to all other potential plaintiffs who may be similarly situated informing them that this Action has been filed, the nature of the Action, and of their right to opt in to this lawsuit if they worked overtime but were not paid compensation and benefits pursuant to 29 U.S.C. §216(b);

e.   An award of damages to GOINGS and similarly situated

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | F: 877.464.7316

employees, in the amount of their respective unpaid overtime compensation, plus an equal amount of liquidated damages pursuant to 29 U.S.C. §216(b);

f. GOINGS' reasonable attorneys' fees, including the costs and expenses of this Action;

g. Costs of Action incurred herein, including expert fees;

h. Pre-judgment and post-judgment interest, as provided by law; and

i. Such other legal relief to which they may be entitled.

## JURY TRIAL DEMAND

Plaintiffs, MARTIN and GOINGS, and all similarly situated employees who join this Action, demand a trial by jury on all issues so triable.

Dated: October 13, 2022.                    Respectfully submitted,

By:    /s/ Gina Cadogan
       GINA MARIE CADOGAN
       Fla. Bar No. 177350
       Cadogan Law
       300 S. Pine Island Road, Suite 107
       Plantation, FL 33324
       Telephone: 954.606.5891
       Facsimile: 877.464.7316
       gina@cadoganlaw.com
       kathy@cadoganlaw.com
       tyler@cadoganlaw.com